989 F.2d 501
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Joseph T. SAND, Defendant-Appellant.
 Nos. 91-2021, 91-2054.
 United States Court of Appeals, Sixth Circuit.
 March 15, 1993.
 
 Before ALAN E. NORRIS and SUHRHEINRICH, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Joseph Theodore Sand alleges ineffective assistance of counsel and appeals the length of his sentence after pleading guilty to a two-count Superceding Information. We affirm the district court's determinations for the following reasons.
 
 I.
 
 2
 Defendant-appellant Joseph Theodore Sand ("Sand") and numerous others conspired to plant, cultivate, harvest and distribute marijuana beginning in 1985. Sand admits that he was "responsible for the sale of the marijuana produced by the conspiracy." Appellant's Brief at 1. Willie Martins ("Martins") joined the conspiracy in 1986.
 
 
 3
 Following his arrest in July, 1990, Sand reasoned that Martins must be cooperating with the government. Sand subsequently paid his stepdaughter's boyfriend, John Wojcik ("Wojcik"), $3,000 to kill Martins, presumably to prevent Martins from testifying against him. Sand supplied Wojcik with Martins' passport (to identify Martins) and directions to Martins' residence in Florida. In August, 1990, Wojcik was apprehended in South Carolina with a .357 magnum revolver, the passport, and directions to Martins' Florida residence.
 
 
 4
 Following an Indictment, and two Superceding Indictments, the United States Attorney filed a two-count Superceding Information on April 2, 1991:
 
 
 5
 That from on or before 1986 until October 15, 1987, in the Eastern District of Michigan and elsewhere, JOSEPH THEODORE SAND, defendant herein, did conspire with various individuals, known and unknown, to knowingly or intentionally manufacture marijuana, a Schedule I controlled substance, in an amount in excess of 50 plants ... in violation of Title 21, United States Code, Sections 841(a)(1) and 846 (Count One).
 
 
 6
 That from on or around August 14, 1990, until August 23, 1990, in the Eastern District of Michigan, Southern Division, JOSEPH THEODORE SAND, defendant herein, did attempt to kill another person, to wit: William Martins with the intent to prevent the attendance or testimony of William Martins in an official proceeding ... in violation of Title 18, United States Code, Section 1512(a)(1)(A) (Count Two).
 
 
 7
 Superceding Information at 1-2.
 
 
 8
 Sand's plea hearing on April 5, 1991, was adjourned without a plea being entered to accommodate Sand's request to consult further with his attorney regarding the waiver of indictment:
 
 
 9
 THE COURT: Well you're lifting your hands like you're frustrated. Are you satisfied? I am not in any hurry. If you want more time to talk about it or think about it, it's okay with me. We'll just adjourn the matter and you can--I'm not in any rush. Except I want to find out whether you are going to plead guilty or whether you're not and get the matter disposed of one way or the other. But I don't have to do it today.
 
 
 10
 THE DEFENDANT: Your Honor, I'd like to plead guilty to the marijuana. You know, I did do it and I'm guilty of it and I done wrong. But I would like to speak to [my attorney] about this other stuff.
 
 
 11
 THE COURT: You want more time to talk to him, is that correct?
 
 
 12
 THE DEFENDANT: Yes, Your Honor.
 
 
 13
 April 5, 1991 Plea Hearing at 18.
 
 
 14
 On May 20, 1991, Sand executed, and the district court accepted, a waiver of indictment. Immediately thereafter, Sand pled guilty to the two-count Superceding Information pursuant to the "Rule 11 Plea Agreement" filed with the district court on April 10, 1991.
 
 
 15
 On July 23, 1991, the district court held a hearing to review Sand's presentence report, to accept or reject the plea agreement, and to impose sentence. After allowing a short recess to enable Sand to reread his presentence report, the district court judge rescheduled the proceedings after Sand remarked: "I'm--I'm scared and I'm confused about what the law is. I'm scared to ask for a postponement 'til this--'til this presentencing thing gets straightened out.... I don't know what my lawyer has, you know, contested, your Honor." July 23, 1991 Hearing at 32-33.
 
 
 16
 On August 20, 1991, the district court judge accepted Sand's guilty pleas and the Rule 11 Plea Agreement which stated (in relevant part):
 
 
 17
 Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the defendant, the attorney for the defendant, and the government agree as follows:
 
 
 18
 1. Defendant shall enter a plea of guilty to Counts One and Two of the superceding information.
 
 
 19
 2A. Pursuant to Rule 11(e)(1)(C) of the Federal Rules of Criminal Procedure, the parties agree that any sentence of incarceration shall not exceed 15 years on Count One, 51 months on Count Two; with the sentence on Count Two concurrent to Count One. Unless the court determines that defendant will not reasonably be able to pay a fine, or that paying a fine will unduly burden any of defendant's dependents, a fine shall be imposed. The parties recommend that the fine imposed not exceed $1,000,000.00....
 
 
 20
 2B. Defendant may be sentenced to a term of supervised release, to be served after any period of incarceration, of between two and three years.
 
 
 21
 * * *
 
 
 22
 2D. Defendant will pay a special assessment of $100.00 in addition to any fine imposed. This assessment will be paid by defendant before sentence is imposed, and defendant will furnish a receipt at sentencing....
 
 
 23
 3. The government shall dismiss case number 90-80747, now pending before Judge Duggan, and the second superceding indictment in this case; both dismissals to occur after sentencing.
 
 
 24
 Rule 11 Plea Agreement at 1-3 (emphasis in original) (footnote omitted). The district court judge then sentenced Sand:
 
 
 25
 [T]he plea agreement calls for 15 years maximum on Count One and 51 months on Count Two concurrent with Count One.
 
 
 26
 The following is the sentence of the Court. Count One is that it is adjudged that the defendant, Joseph Theodore Sand, is committed to the custody of the Attorney General or his authorized representative for a period of 10 years.
 
 
 27
 On Count Two, pursuant to the Sentencing Reform Act of 1989, the defendant, Joseph Theodore Sand, is hereby committed to the custody of the Bureau of Prisons for a term of 51 months to run concurrently to the term imposed on Count One.
 
 
 28
 The defendant shall pay a fine to the United States in the amount of $7,500 on each count totaling $15,000 in a lump sum or installments of $428.57 per month.
 
 
 29
 Upon release from confinement the defendant shall be placed on supervised release for a term of 3 years on each count. The terms of supervised release shall run concurrently.
 
 
 30
 * * *
 
 
 31
 A $50 special assessment on each count is ordered totaling $100.
 
 
 32
 August 20, 1991 Sentencing Hearing at 22-23.
 
 
 33
 Sand thereafter filed a timely notice of appeal.
 
 II.
 Ineffective Assistance of Counsel
 
 34
 Sand argues on appeal that "[p]erformance of defense counsel prior to and at the time of sentencing was so inadequate as to constitute a violation of the appellant's due process and sixth amendment rights." Appellant's Brief at 5.
 
 
 35
 Sand did not assert his ineffective assistance of counsel claim in the district court. "As a general rule, we will not review an ineffective assistance of counsel claim raised for the first time on appeal." United States v. Daniel, 956 F.2d 540, 543 (6th Cir.1992). See also United States v. Gonzales, 929 F.2d 213, 215 (6th Cir.1991) ("Because an ineffective assistance of counsel claim may not be raised for the first time on appeal, we are precluded from addressing the merits of Gonzales' claim."); United States v. Swidan, 888 F.2d 1076, 1081 (6th Cir.1989) ("This court will not review an ineffective assistance of counsel claim raised for the first time on appeal.").
 
 
 36
 "Ineffective assistance of counsel claims are best brought by a defendant in a post-conviction proceeding under 28 U.S.C. § 2255 so that the parties can develop an adequate record on the issue." United States v. Daniel, 956 F.2d at 543. "We will consider an ineffective assistance of counsel claim on direct appeal of a criminal conviction only when the record is adequate to assess the merits of the defendant's allegations." Id. Because Sand raised his ineffective assistance of counsel claim for the first time on appeal and the record is not adequate to assess the merits of his claim, we will not entertain Sand's ineffective assistance of counsel claim.
 
 Obstruction of Justice Enhancement
 
 37
 Sand's 51-month sentence, imposed for violating 18 U.S.C. § 1512 ("Tampering With a Witness, Victim or an Informant"), was calculated using United States Sentencing Guidelines section 2J1.2:
 
 Obstruction of Justice
 
 38
 (a) Base Offense Level: 12
 
 
 39
 (b) Specific Offense Characteristics
 
 
 40
 (1) If the offense involved causing or threatening to cause physical injury to a person, or property damage, in order to obstruct the administration of justice, increase by 8 levels.
 
 
 41
 U.S.S.G. § 2J1.2.
 
 
 42
 Though Sand argues that "[t]here was no evidence offered to suggest that the appellant intended that anyone be physically harmed for the purpose of obstructing justice," Appellant's Brief at 15 (emphasis in original), the government properly maintains that Sand's "[Alford ] plea is itself an admission that the threat was for the purpose of obstructing justice." Appellee's Brief at 25.
 
 
 43
 To the extent that Sand implicitly argues that section 2J1.2(b)(1) is inapplicable because Martins was not actually threatened or physically harmed (an argument that he expressly made to the district court), appellant's assignment of error must fail. See United States v. Moody, 977 F.2d 1420, 1425 (11th Cir.1992) (sentencing guidelines do not require communication of threat directly to potential victim), cert. denied, --- S.Ct. ---- (1993); United States v. Sims, 952 F.2d 1014, 1017 (8th Cir.1991) ("Sims attempted to murder a government witness by promising to pay the informant money, and by giving the informant an unregistered gun and ammunition for that specific purpose. We cannot conclude that the district court erred in finding that from the point of view of the victim Baumeister, Sims' offense involved the threatened use of a dangerous weapon.").
 
 Acceptance of Responsibility
 The sentencing guidelines provide:
 Acceptance of Responsibility
 
 44
 (a) If the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct, reduce the offense level by 2 levels.
 
 
 45
 (b) A defendant may be given consideration under this section without regard to whether his conviction is based upon a guilty plea or a finding of guilt by the court or jury or the practical certainty of conviction at trial.
 
 
 46
 (c) A defendant who enters a guilty plea is not entitled to a sentencing reduction under this section as a matter of right.
 
 
 47
 U.S.S.G. § 3E1.1.
 
 
 48
 Though an Alford plea does not necessarily preclude a two-level reduction in the offense level for acceptance of responsibility, United States v. Tucker, 925 F.2d 990, 992-93 (6th Cir.1991), a defendant must clearly demonstrate acceptance of responsibility for his criminal activities in a timely fashion. United States v. Luster, 889 F.2d 1523, 1526 (6th Cir.1989); see generally U.S.S.G. § 3E1.1, comment. (n. 1) ("In determining whether a defendant qualifies for this provision, appropriate considerations include, but are not limited to, the following: (a) voluntary termination or withdrawal from criminal conduct or association[;] (d) voluntary surrender to authorities promptly after commission of the offense[;] and (g) the timeliness of the defendant's conduct in manifesting the acceptance of responsibility.").
 
 
 49
 Sand failed to demonstrate an acceptance of responsibility. Pursuant to his Alford plea to Count Two of the Superceding Information, Sand pleaded guilty to violating 18 U.S.C. § 1512 but refused to admit any of the underlying facts. Moreover, he and his attorney repeatedly informed the district court judge that Sand entered the plea agreement solely because it offered the appellant the best opportunity for an early release from incarceration. Because the district court's denial of the two-level acceptance of responsibility reduction was not clearly erroneous, see United States v. Williams, 894 F.2d 208, 213 (6th Cir.1990) ("[w]e review the district court's determination of a defendant's acceptance of responsibility under a clearly erroneous standard"), we reject Sand's assignment of error.
 
 Criminal History Computation
 
 50
 Sand argues that the district court improperly increased his criminal history to category III on the basis of a prior drug possession charge which appellant claims was never adjudicated:
 
 
 51
 The appellant has never been given a sentence or fine of any kind for his 1987 arrest in Florida. There was no probation or suspended sentence. There was no completed adjudication of any sort in this case. Wherever the Probation Department acquired this information, it was apparently not from the state of Florida, who withheld adjudication in the case, and imposed nothing which could be construed, except by the greatest stretches of the imagination, as a sentence under the definition in § 4A1.2(a)(1).
 
 
 52
 Appellant's Brief at 17.
 
 
 53
 Because Sand offers no proof to refute the information in the presentence report regarding his cocaine possession conviction, we reject Sand's criminal history computation claim.
 
 Mitigating Role in the Offense
 
 54
 Sand argues that, pursuant to U.S.S.G. § 3B1.2(b), he is entitled to a two-level reduction in his adjusted offense level due to his "limited culpability" in the witness tampering charge. Appellant's Brief at 18. Section 3B1.2 provides:
 
 Mitigating Role
 
 55
 Based on the defendant's role in the offense, decrease the offense level as follows:
 
 
 56
 (a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.
 
 
 57
 (b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.
 
 
 58
 In cases falling between (a) and (b), decrease by 3 levels.
 
 
 59
 U.S.S.G. § 3B1.2.
 
 
 60
 Because Sand failed to admit any of the facts underlying the witness tampering charge (pursuant to his Alford plea), the government correctly maintains that "defendant cannot avail himself of the benefits of an Alford plea and subsequently deny his guilt in order to gain further benefits," Appellee's Brief at 28, because "a determination of whether or not defendant was a minimal participant is impossible." Id. Sand's mitigating role claim is therefore meritless.
 
 The $7,500 Fine
 
 61
 Sand contests $7,500 (the amount governed by the sentencing guidelines) of the $15,000 fine imposed on him by the district court:
 
 
 62
 [T]he appellant is taking medication for spinal problems, is diagnosed with idiopathic cardiomyopathy, awaiting a heart transplant, has four dependents, a pre-exist[ing] debt of $12,000 and a net monthly family income of [negative] $97. The appellant was diagnosed as terminal four years ago and takes a ridiculous amount of medication each day just to stay alive.
 
 
 63
 It is absolutely ridiculous to believe that a man with no money, no assets, who is prevented from working by a broken back and terminal heart disease can pay a seven thousand five hundred dollar fine.
 
 
 64
 Appellant's Brief at 19.
 
 
 65
 Pursuant to the Sentencing Guidelines, the appellant must establish an inability to pay the fine. See U.S.S.G. § 5E1.2(a) ("The court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine."); U.S.S.G. § 5E1.2(e) ("The amount of the fine should always be sufficient to ensure that the fine, taken together with other sanctions imposed, is punitive."); U.S.S.G. § 5E1.2(f) ("If the defendant establishes that (1) he is not able and, even with the use of a reasonable installment schedule, is not likely to become able to pay all or part of the fine required by the preceding provisions, or (2) imposition of a fine would unduly burden the defendant's dependents, the court may impose a lesser fine or waive the fine.").
 
 
 66
 In response, the government argues that "[t]he fine imposed by the sentencing court ... was quite reasonable in light of the fact that the combined maximum penalties applicable to the charges to which the defendant plead guilty amounted to $1,250,000." Appellee's Brief at 29. Because the sentencing guidelines "place the burden on the defendant to prove that he is unable to pay a fine," United States v. Hickey, 917 F.2d 901, 907 (6th Cir.1990), Sand must prove that, once released from prison, he will be unable to meet the installment terms of the sentence ($428.57 per month). See Judgment in a Criminal Case--Supervised Release ("The defendant shall pay any fine imposed by this Order that remains unpaid at the commencement of supervised release.").
 
 
 67
 Because Sand failed to prove an inability to pay the fine imposed by the district court, and because Sand's "Monthly Necessary Living Expenses," see Presentence Report at 11-12, appear to be inflated, we reject Sand's assignment of error.
 
 Disparity of Sentences Among Conspirators
 
 68
 Sand argues that "[t]he sentence imposed for conspiracy to manufacture marijuana was improper based upon the disparity between the appellant's sentence and those of the indicted co-conspirators and was constitutionally disproportionate." Appellant's Brief at 21.
 
 
 69
 Though "[a] sentencing court should strive 'to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct,' " United States v. LaSalle, 948 F.2d 215, 218 (6th Cir.1991) (quoting 18 U.S.C. § 3553(a)(6)), "[t]he objective of this statute is not to eliminate sentence disparities between defendants of the same case who have different criminal records; rather, the objective is to eliminate unwarranted disparities nationwide." Id. Moreover,
 
 
 70
 to reduce a defendant's sentence because of a perceived disparity between the sentences of one defendant and that of his co-defendant in the same case creates a new and unwarranted disparity between that first defendant's sentence and the sentences of all the defendants nationwide who are similarly situated.... Thus, a reduction in LaSalle's sentence simply to eliminate a disparity as compared to his co-defendants' sentences is unreasonable.
 
 
 71
 Id. (citing United States v. Nelson, 918 F.2d 1268 (6th Cir.1990); United States v. Parker, 912 F.2d 156 (6th Cir.1990)).
 
 
 72
 Because Count One of the Superceding Information carried a 20-year statutory maximum term of imprisonment (which the plea agreement capped at 15 years), the district court acted within its discretion by sentencing Sand to 10 years imprisonment notwithstanding the sentences meted out to Sand's co-conspirators. Accordingly, we reject the appellant's final assignment of error.
 
 III.
 
 73
 We AFFIRM the district court's determinations for the aforementioned reasons.