991 F.2d 796
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Lionel FLEMING, Defendant-Appellant.
 No. 92-5008.
 United States Court of Appeals, Sixth Circuit.
 April 6, 1993.
 
 Before NELSON, Circuit Judge, and PECK and CONTIE, Senior Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant-appellant Lionel Fleming appeals the sentence imposed on him as the result of his conviction for conspiracy to possess cocaine with intent to distribute it in violation of 21 U.S.C. § 846. On appeal, the principal issue is whether the district court, for sentencing purposes, was correct in adding five kilograms of cocaine to the weight of the drugs involved in the offense where defendant negotiated to buy those five additional kilograms but was arrested before he could do so. For the reasons that follow, we vacate and remand.
 
 I.
 
 2
 Toward the end of 1989, a confidential informant working for the Drug Enforcement Administration and the Kentucky State Police began making cocaine buys from Fred Carter. When Carter reported that he needed cocaine to sell and asked the informant if he could obtain it, the drug agents set up a fake sale in order to cause Carter and any of his associates to bring their money to a meeting at which they could conveniently be arrested.
 
 
 3
 The sale of six kilograms of cocaine was to occur on February 13, 1990, but Carter was unable to meet the agreed price. He explained that his associates had been diverted to Nashville for unknown reasons, and he agreed to meet the informant at a later time to complete the transaction. The two men met at a restaurant on February 15, 1990, after Carter agreed in a telephone conversation to purchase cocaine for $19,000 per kilogram. While the informant waited, Carter left the restaurant, met with defendant Fleming, and then returned with Fleming to the restaurant where Carter introduced Fleming to the informant as "the big guy." Fleming assured the informant that he had the money to buy five kilograms and was disappointed when told that he could buy only three kilograms at that time. Nevertheless, Fleming left the restaurant to obtain the money for three kilograms. When he returned from a meeting with a person waiting in a parked car across the street, he showed a bag of money to the informant and said, "[T]hat's the money. And next week, we want another five key." He added that he expected the informant to lower his price somewhat on the next five-kilogram installment.
 
 
 4
 The informer then telephoned Steve Russell, a Kentucky State Police detective who was playing the role of the supplier of the cocaine. Carter spoke to Detective Russell, telling him that Carter and his associates had hoped that day to buy five kilograms, not just the three offered, and adding that if the cocaine was to their liking, the buyers would definitely purchase an additional five kilograms in the next week. After this conversation, Fleming and Carter left the restaurant for Carter's apartment, where the cocaine was to be delivered to them. They were arrested outside, and $87,000 in currency was found on Fleming's person.
 
 
 5
 Defendant Fleming and four co-defendants, Herman Simpson, Sydney Ware, Fred Carter, and Zebedee Lynum, were charged in a three-count indictment, Count One of which alleged that they conspired to possess ten kilograms of cocaine with the intent to distribute it. Carter and Lynum entered guilty pleas and agreed to cooperate with the government. The three remaining co-defendants went to trial on July 1, 1991, at which time the jury acquitted Simpson and Ware but convicted Fleming on Count One.
 
 
 6
 At sentencing, the district court heard argument concerning the weight of the drugs under negotiation in the transactions between Fleming and the law enforcement agents and determined that eight kilograms were involved for sentencing purposes. That weight of drugs, when factored into the calculations supplied by the United States Sentencing Guidelines ("U.S.S.G."), resulted in a base offense level of 32 and a sentence of 121 months of incarceration for Fleming. This timely appeal followed.
 
 II.
 
 7
 Defendant argues that the district court erred in finding him legally responsible for more than the three kilograms of cocaine he agreed to purchase on the day of his arrest. Specifically, he contends that the five kilograms he asked to buy in the following week should not have been counted against him because no firm price term had been agreed upon and the time and place of the sale had not been discussed. According to defendant, the omission of these terms must result in a finding that no negotiation for drugs occurred, and, therefore, the district court erred in counting against him the five kilograms he discussed with the informant.
 
 
 8
 Defendant also argues a procedural deficiency in his sentencing having to do with the determination of the weight of drugs involved. After hearing argument on the subject at the sentencing hearing, the district court ruled as follows:
 
 
 9
 THE COURT: I've come to the conclusion that the first transaction was for three and the second was for five. I'm going to stick with the total of eight kilograms that are involved.
 
 
 10
 J.A. 49. This was apparently the entire discussion of the matter by the court.
 
 
 11
 In United States v. Gessa, 971 F.2d 1257 (6th Cir.1992) (en banc), this court vacated the sentence and remanded for resentencing where it found the district court's ruling on the quantity of drugs to be confusing. Application Note One to U.S.S.G. § 2D1.4, the provision in effect at the time of Gessa's sentencing,[1] provided:
 
 
 12
 If the defendant is convicted of an offense involving negotiation to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount. However, where the court finds that the defendant did not intend to produce and was not reasonably capable of producing the negotiated amount, the court shall exclude from the guideline calculation the amount that it finds the defendant did not intend to produce and was not reasonably capable of producing.
 
 
 13
 In Gessa, the district court had refused to count 2500 kilograms of what it called "conversational cocaine" against the defendant. Its reasons for not counting that cocaine were unclear, and this court remanded for clarification and resentencing, holding that
 
 
 14
 [a]ccording to the dictates of Guideline § 2D1.4, the district court must include the "conversational cocaine" involved in the 2500 kilogram conspiracy even though the object of that conspiracy was uncompleted, if it concludes that defendant had the intention to produce or was reasonably capable of producing 2500 kilograms by way of air drop and boat lift. On the other hand, under Application Note One, the district court is required to exclude the 2500 kilogram amount if it finds that defendant did not have the intention and was not reasonably capable of producing that specific amount. Accordingly, we vacate the sentence and remand to the district court to make specific findings in this regard pursuant to Application Note One of Guideline § 2D1.4.
 
 
 15
 Id. at 1265 (emphasis added).
 
 
 16
 It appears obvious to us from the district court's cryptic ruling in the present case that the court did not make specific findings on the record concerning defendant Fleming's intent or ability to purchase the next five kilograms of cocaine. Gessa requires those specific findings, and this case shall be remanded to permit the district court to make them.
 
 
 17
 Finally, defendant notes that two of his original co-defendants, Carter and Lynum, who pled guilty, were sentenced to lesser terms of imprisonment on findings that they were responsible only for a conspiracy to purchase three kilograms of cocaine. From this fact, defendant argues that the district court was estopped to sentence him on the basis of eight kilograms because the findings regarding his co-defendants had by then become the law of the case. Defendant cites no authority for his law-of-the-case argument and concludes merely that his sentence should be reduced "to avoid the resultant unfairness and disparity...." Brief of Appellant at 13.
 
 
 18
 This circuit has refused to endorse guideline departures designed to equalize one defendant's sentence with another's. United States v. LaSalle, 948 F.2d 215, 218 (6th Cir.1991); United States v. Rutana, 932 F.2d 1155, 1159 (6th Cir.), cert. denied, 112 S.Ct. 300 (1991); United States v. Parker, 912 F.2d 156, 157 (6th Cir.1990). The other circuits considering the question have reached the same conclusion. Gessa, 971 F.2d at 1282 (Krupansky, J., dissenting) (collecting cases). Defendant's argument thus has no merit.
 
 III.
 
 19
 For the reasons stated, we VACATE the sentence in this case and REMAND with instructions to the district court to make the findings concerning defendant's intent and ability to consummate the five-kilogram transaction as required by United States v. Gessa.
 
 
 20
 DAVID A. NELSON, Circuit Judge, dissenting.
 
 
 21
 In United States v. Gessa, 971 F.2d 1257 (6th Cir.1992) (en banc), the defendant was found to have engaged in conversations about smuggling 2,500 kilograms of cocaine into this country from Colombia. For reasons that remained unclear after the district judge had delivered himself of a series of prolix and confusing statements at the sentencing hearing, the judge refused to count the 2,500 kilograms for sentencing purposes. We could not tell, when the case came before us on appeal, whether the 2,500 kilogram amount had been excluded because the judge thought the defendant did not intend to produce that quantity and was not reasonably capable of doing so--in which event the exclusion would have been proper under U.S.S.G. § 2D1.4--or because the deal simply had not come to fruition, in which event the exclusion would have been improper under § 2D1.4. Because the district court's pronouncements were in need of what we called "further clarification," we remanded the case for a specific finding as to whether, in the words of Application Note 1 to § 2D1.4, "the defendant did not intend to produce and was not reasonably capable of producing the negotiated amount." See Gessa, 971 F.2d at 1265.
 
 
 22
 My colleagues have concluded that a remand is necessary for similar reasons in the case at bar. With respect, I am constrained to disagree.
 
 
 23
 Unlike the rambling and confusing comments of the district judge in Gessa, the finding before us here strikes me as a model of compression and clarity. It is true that the judge did not explicitly address the ability of defendant Fleming to consummate a five kilogram transaction, but Fleming's ability to do so was never placed in issue. Only the intent to consummate a five kilogram transaction was at issue in this case. No question was ever raised about defendant Fleming's ability to go through with such a deal if he wanted to.
 
 
 24
 Defendant Fleming conceded that he had been able to bring approximately $85,000 to the meeting on February 15, 1990, in order to consummate the purchase of what he was given to understand was three kilograms of cocaine.[1] Fleming did not attempt to argue that he would have been unable to finance the purchase of five more kilograms after disposing of the initial three kilograms. He simply took the position that he had not negotiated to buy five additional kilograms at all. Whether such negotiations occurred, defense counsel told the district judge, "is the sole issue." (Sentencing transcript, p. 24.)
 
 
 25
 Defendant Fleming stated under oath "I did not speak to Jamil about any [five] kilo dealings." After hearing Fleming out, and after considering trial testimony in which confidential informant Jamil Bousaab swore that Fleming had told him "next week I want five keys," the district judge resolved the conflict against the defendant. It was undisputed that defendant Fleming's co-conspirator, defendant Fred Carter, had said that they wanted five more kilograms next week, and the district judge told Fleming's lawyer in so many words that he thought "Carter was speaking on behalf of this defendant [Fleming], not on his own behalf," in asking for the five additional kilograms. (Sentencing transcript, p. 27.)
 
 
 26
 Given the context in which the judge spoke, I see nothing mysterious about the manner in which the court's ultimate conclusion was announced. The judge and the parties had been presented, after all, with a presentence report in which the probation officer summarized the facts as follows:
 
 
 27
 "[Defendant Fleming] came to the meeting with the confidential informant, stating that he had enough money to buy five kilograms, then settled for the purchase of three kilograms of cocaine, and negotiated for five additional kilograms in the next week. Thus, it appears that this conspiracy would involve eight kilograms of cocaine...." (Presentence report, p. 4.)
 
 
 28
 The judge had heard the prosecutor argue that the first negotiation was for five kilograms, not three. The judge had heard the defendant's lawyer argue that only three kilograms in toto should be counted for sentencing purposes, because defendant Fleming denied having asked for five additional kilograms and because a request for five more kilograms without agreement on the price and time and place of delivery would not rise to the dignity of a "negotiation" in any event. It was against this background that the judge made the pronouncement at issue here:
 
 
 29
 "I've come to the conclusion that the first transaction was for three and the second was for five. I'm going to stick with the total of eight kilograms that are involved."
 
 
 30
 The judge's statement was concise, to be sure, but it was hardly cryptic. Taken in conjunction with his observation that Carter had been speaking on behalf of Fleming in saying that they wanted five kilograms the following week, the judge can only have meant that Fleming intended to buy three kilograms on February 15, 1990, and five kilograms the next week. I do not believe that this finding suffers from the deficiencies of the pronouncements that were held to necessitate a remand in Gessa, and I would therefore affirm the sentence. To require a resentencing here, in my opinion, is to misallocate scarce judicial resources.
 
 
 
 [1]
 Similar provisions are now contained in U.S.S.G. § 2D1.1, comment. (n. 12)
 
 
 [1]
 The Assistant U.S. Attorney who prosecuted the case consistently maintained that the quantity assigned to the February 15 transaction for sentencing purposes should have been five kilograms, because defendant Fleming was attempting to buy five kilograms on that date. The probation officer who prepared the presentence report originally recommended using five kilograms, but reduced his recommendation to three kilograms when the defendant objected to the larger figure. The Assistant U.S. Attorney objected to the reduction, but the district court took the defendant's side and accepted the probation officer's revised recommendation